UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
CHARLES CARRASQUILLO,

                      Petitioner,

             - against -

PHILIP HEATH, Superintendent,
Sing Sing Correctional Facility,

                      Respondent.
-------------------------------------------------------x

**NOT FOR PUBLICATION**

**MEMORANDUM & ORDER**
10-CV-5639 (PKC)

PAMELA K. CHEN, United States District Judge:

Petitioner Charles Carrasquillo ("Petitioner"), appearing *pro se*, seeks a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, challenging his conviction and sentence entered on April 13, 2006 in the Supreme Court of the State of New York, Kings County. Following a guilty plea, Petitioner was convicted of one count of Manslaughter in the First Degree and sentenced to eighteen years' incarceration.

Petitioner challenges his conviction on four grounds: (1) ineffective assistance of trial counsel, because his attorney erroneously informed him that he could not raise a theory of self-defense at trial and failed to investigate exculpatory evidence; (2) trial court error, because the court failed to provide Petitioner with substitute counsel upon his request; (3) prosecutorial misconduct, because the District Attorney's office improperly withheld material evidence in violation of *Brady v. Maryland*; and (4) ineffective assistance of appellate counsel, because his appellate attorney filed an *Anders* brief when non-frivolous grounds for appeal existed, failed to provide a copy of her brief to Petitioner, and failed to inform Petitioner that he had the right to request the assistance of alternate counsel and to oppose her brief. For the reasons set forth below, the petition for a writ of *habeas corpus* is denied.

1

# BACKGROUND

I.  **FACTS**

   A.  **Incident and Arrest**

On November 20, 2004, at 726 Alabama Avenue in Brooklyn, Petitioner became involved in a dispute with Harry Lopez, who rented a room in Petitioner's house. (Respondent's Affidavit ("Resp. Aff."), Dkt. 4, at ¶ 4.) Petitioner's brother broke up the argument, and Petitioner and Lopez stepped outside the house. (*Id*.) While the men were standing on the front steps, Lopez pulled out a knife. In response, Petitioner pulled out a knife and stabbed Lopez five times in the chest, back, and hand, causing Lopez's death. (*Id*.) Petitioner was arrested and charged with murder in the second degree. (*Id*. at ¶ 5.)

   B.  **Charges and Motion for Reassignment of Counsel**

Terrence Sweeney, Esq., was assigned to represent Petitioner. (*Id*. at ¶ 6.) On June 29, 2005, Petitioner filed *a pro se* motion seeking reassignment of counsel, claiming that his assigned counsel had failed to investigate the case, research the law, prepare an adequate defense for trial, and "take accurate and prompt action to protect" him. (*Id*.; Dkt. 4-2, Exhibit A, at 3.) The trial court provided this motion to Petitioner's counsel, but no further action was taken and counsel continued to represent Petitioner. (Resp. Aff., Dkt. 4, at 8 (citing Dkt. 4-3, at ECF 8[1]).)

   C.  **Guilty Plea and Sentence**

On March 15, 2006, Petitioner, represented by Mr. Sweeney, pled guilty to first-degree manslaughter in exchange for a promised sentence of eighteen years' imprisonment, to be followed by five years of supervised release. (Resp. Aff. at ¶ 7; Dkt. 4-2, Exhibit B, at 2–3, 9.)

---

[1] Citation to "ECF" refers to the page numbering of the Electronic Court Filing ("ECF") system, and not the document's internal pagination.

Petitioner affirmed before the court that he wished to plead guilty to first-degree manslaughter, that he had had sufficient time to consult with his counsel, and that he was satisfied with his counsel's representation. (Ex. B at 3–5.) Additionally, Petitioner affirmed that he was not under the influence of drugs or alcohol, had not been threatened into pleading guilty, and had not been promised anything other than the above-mentioned sentence. (*Id.* at 4.) Petitioner stated that he understood that he was giving up his rights to a trial before a judge or jury, to confront witnesses against him, to call his own witnesses, to testify on his own behalf or remain silent, and to require the government to prove their case beyond a reasonable doubt. (*Id.*)

During the plea proceeding, Petitioner admitted that on November 20, 2004, with intent to cause serious physical injury, he stabbed the victim and caused his death. (*Id.* at 6.) Petitioner also specifically acknowledged that he was waiving his right to assert a claim of self-defense:

> THE COURT: Tell me what happened.
>
> DEFENDANT CARRASQUILLO: He got out [sic] into the argument. He pulled out a knife. I pulled out a knife, and I caused his death.
>
> THE COURT: Okay. Now, what you've just said to me sounds to me as if you are suggesting to me that you have a defense of self defense, and I want you to understand that by pleading guilty, you're giving up the right to put forth that defense of self defense. Do you understand what I just said to you?
>
> DEFENDANT CARRASQUILLO: Yes, ma'am.

(*Id.*) Petitioner, in response to questions from the court, further affirmed that he was waiving his right to appeal to a higher court from any plea, sentence, or other pretrial ruling. (*Id.* at 8.)

On April 13, 2006, Petitioner appeared before the trial court for sentencing. (Dkt. 4-2, Exhibit C, at 1.) Prior to imposing sentence, the court questioned Petitioner regarding his allocution at the plea hearing.

> THE COURT: You pled guilty before me on March 15th. I notice in your statement that you admit your guilt to the present offense, that you in fact stabbed [Harry]

> Lopez. You said something about the victim pulling out a knife. And I just want to make sure that you understand that you may have a valid defense of self-defense, but you chose to plead guilty. I want to make sure you understand that. You've discussed that with your attorney and that you have chosen to plead guilty because in fact you are guilty?
>
> DEFENDANT CARRASQUILLO: Yes, ma'am.

(*Id*. at 4.) Petitioner was sentenced as a predicate felon[2] to eighteen years in jail, to be followed by five years of post-release supervision. (*Id*. at 2–5.)

### D. Direct Appeal

On January 8, 2007, Petitioner filed a notice of appeal in the Appellate Division. (Resp. Aff. at ¶ 11.) Lynn W.L. Fahey, Esq. of Appellate Advocates, was assigned to represent Petitioner in his appeal. (*Id*.)

On October 22, 2007, Ms. Fahey informed Petitioner by letter that she would be filing a brief with the Appellate Division requesting to be relieved as counsel "as I could find no viable issues to raise [on appeal]." (Dkt. 4-2, Exhibit D, at ECF 36.) She informed Petitioner that he had the right to file a *pro s*e supplemental brief "setting forth the points you think can be raised on your appeal," and that he was obligated to notify the court within 30 days of his intent to do so. (*Id*.) She informed Petitioner that if the court found merit in his brief, it would assign him new appellate counsel. (*Id*.)

On October 23, 2007, Ms. Fahey filed an *Anders* brief with the Appellate Division requesting that the court permit her to withdraw as counsel, on the basis that she was unable to find any non-frivolous issues to raise on Petitioner's behalf. (Resp. Aff. at ¶ 11; Ex. D at 8.) Ms.

---

[2] Because Petitioner had previously been convicted of a non-violent felony offense, his sentence was governed by New York Penal Law Section 70.06, which sets out minimum and maximum terms of imprisonment for certain second felony offenders. Petitioner's prior convictions included criminal possession of a controlled substance in the third degree, criminal sale of a controlled substance in the fifth degree, attempted sale of a controlled substance in the fifth degree, and criminal sale of a controlled substance in the third degree. (Ex. C at 2–4.)

Fahey cited the transcripts of Petitioner's plea hearing and sentencing, stating: "[N]othing appears in the record to indicate that the plea was entered other than knowingly and intelligently." (Ex. D. at 7.) Ms. Fahey argued that, as Petitioner had validly entered his guilty plea and waiver of appeal, no non-frivolous issues existed that could be raised on appeal. (*Id*. at 6–8.)

On March 4, 2008, the Appellate Division granted counsel's application for leave to withdraw and affirmed the trial court's judgment, holding that there were no non-frivolous issues that could be raised on appeal. *People v. Carrasquillo*, 851 N.Y.S.2d 887 (App. Div. 2008). On May 29, 2008, Petitioner's application for leave to appeal was denied. *People v. Carrasquillo*, 10 N.Y.3d 860 (2008).

### E. Writ of Error *Coram Nobis*

On March 31, 2008, Petitioner, acting *pro se*, moved in the Appellate Division for a writ of error *coram nobis*, claiming that his assigned appellate counsel was ineffective. (Resp. Aff. at ¶ 14.) Petitioner argued that appellate counsel had failed to: (1) provide him with a copy of her brief requesting to withdraw as appellate counsel; (2) inform Petitioner of his right to request different appellate counsel; (3) inform Petitioner that he had the right to oppose counsel's brief or that the brief was likely to result in the dismissal of his appeal; and (4) assert on appeal that the trial court erred in providing Petitioner's motion for reassignment of trial counsel to Petitioner's trial counsel. (*Id*.; Dkt. 4-2, Exhibit G, at 2–3.)

On September 16, 2008, the Appellate Division denied Petitioner's application, holding that Petitioner had "failed to establish that he was denied the effective assistance of counsel." *People v. Carrasquillo*, 863 N.Y.S.2d 376 (App. Div. 2008). On December 18, 2008, the Court of Appeals denied Petitioner's application for leave to appeal. *People v. Carrasquillo*, 11 N.Y.3d 896 (2008).

5

## F. § 440.10 Motion

On January 13, 2010, Petitioner, acting *pro se*, moved to vacate his judgment of conviction pursuant to New York Criminal Procedure Law Section 440.10(1)(h) ("440 Motion") on the basis that: (1) he was denied his right to counsel when the trial court forwarded his motion for reassignment of counsel to his existing counsel and accepted his plea without inquiring into the basis for the motion; (2) trial counsel erroneously advised him that he did not have a claim of self-defense and failed to investigate the existence of a toxicology report showing that the victim had been intoxicated; and (3) the prosecution withheld this toxicology report in violation of *Brady v. Maryland*. (Resp. Aff. at ¶ 17.) On July 1, 2010, the Supreme Court summarily denied Petitioner's 440 Motion. (*Id*. at ¶ 18; Dkt. 4-4, Exhibit N., at 1–3.) Petitioner applied for leave to appeal to the Appellate Division, which was denied on November 4, 2010. (Resp. Aff. at ¶ 19.)

## G. Instant Petition

The instant petition was timely filed on December 1, 2010. (Petition ("Pet."), Dkt. 1.) On August 23, 2013, Petitioner made a discovery motion requesting production of the victim's toxicology report. (Dkt. 6 at 1.) Respondent opposed this motion, arguing that Petitioner had not proven the existence of such a report or that, if such a report existed, it would be material. (Dkt. 7 at 1–2.) On January 27, 2014, the Court granted Petitioner's motion, finding "good cause" to require Respondent to provide Petitioner with a copy of any toxicology report and ordering Respondent to file a letter with the Court if such a report did not exist. (Order on Motion for Discovery, dated Jan. 27, 2014.) On February 26, 2014, Respondent produced the toxicology report, which showed that the victim had a blood ethanol level of 0.09% and that cannabinoids were detected in the blood and brain. (Dkt. 9 at ECF 8.)

## DISCUSSION

**I.     STANDARD OF REVIEW**

Under 28 U.S.C. § 2254(a), a federal district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  "[F]ederal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (internal quotation marks omitted); *see also Howard v. Walker*, 406 F.3d 114, 121 (2d Cir. 2005) ("A claim that a state conviction was obtained in violation of state law is not cognizable in the federal court.").

If the petitioner's claim "was adjudicated on the merits in State court proceedings," the district court may only grant the petition if the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in  light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  An "'adjudication on the merits' is one that '(1) disposes of the claim on the merits, and (2) reduces its disposition to judgment.'"  *Bell v. Miller*, 500 F.3d 149, 155 (2d Cir. 2007) (quoting *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001)).  Review under § 2254(d)(1) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

A State court decision is "contrary to" clearly established federal law if "the state court reached a conclusion of law that directly contradicts a holding of the Supreme Court" or, "when presented with 'facts that are materially indistinguishable from a relevant Supreme Court

7

precedent,'" the State court arrived at an opposite result. *Evans v. Fischer*, 712 F.3d 125, 132 (2d Cir. 2013) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).

A State court decision is an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410 (emphasis in original); *see also Grayton v. Ercole*, 691 F.3d 165, 174 (2d Cir. 2012) ("[T]he writ may only issue where the state court's application of the law was not only wrong, but unreasonable."). A federal habeas court may only "issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

## II. TRIAL COURT'S FAILURE TO REPLACE PETITIONER'S TRIAL COUNSEL

Petitioner claims that the trial court erred when it failed to provide him with substitute counsel upon his request. (Pet. at 7.)

The Supreme Court has held that "a guilty plea represents a break in the chain of events which has preceded it in the criminal process." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Once a defendant has pled guilty in open court, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Id.* Such a defendant "may only attack the voluntary and intelligent character of the guilty plea[.]" *Id. See also United States v. Garcia*, 339 F.3d 116, 117 (2d Cir. 2003) ("it is well settled that a defendant who knowingly and voluntarily enters a guilty plea waives all non-jurisdictional defects in the prior proceedings"). Petitioner's claim regarding substitution of counsel is barred under this standard, as the request for substitution of counsel and the trial court's contested actions occurred prior to the entry of the guilty plea.

8

Furthermore, nothing in the record indicates that the trial court's failure to provide substitute counsel undermined the voluntariness of Petitioner's plea. Petitioner pled guilty ten months after his request for substitute counsel, and there is no indication that he pursued this request further during the interim period. Petitioner attested to his satisfaction with counsel during the plea proceedings and stated that he had had sufficient time to discuss the plea agreement and its consequences with his attorney:

> THE COURT: Have you had enough time to consult with your attorney?
>
> DEFENDANT CARRASQUILLO: Yes, ma'am.

(Ex. B at 3–4.)

\* \* \*

> THE COURT: Are you satisfied with the services of your attorney, Mr. Sweeney?
>
> DEFENDANT CARRASQUILLO: Yes, ma'am.

(*Id*. at 5.)

\* \* \*

> THE COURT: Before entering the plea of guilty, before signing the waiver, have you had an opportunity to discuss the fact that you might have had a defense of self-defense, your plea of guilty, and the waiver? Have you discussed all that with your attorney?
>
> DEFENDANT CARRASQUILLO: Yes, ma'am.
>
> THE COURT: Are you pleading guilty voluntarily?
>
> DEFENDANT CARRASQUILLO: Yes.

(*Id*. at 8.)

9

By pleading guilty, Petitioner waived his non-jurisdictional challenge to the court's failure to replace his trial counsel. Therefore, the State court's denial of this claim was not an unreasonable application of federal law.

## III. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Petitioner claims that trial counsel failed to adequately investigate potential exculpatory evidence and erroneously informed him that he would be unable to argue that he acted in self-defense. (Pet. at 1.)

"[C]laims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland* [*v. Washington*]." *Missouri v. Frye*, 566 U.S. 133, 140 (2012). In order to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984); *see Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (in order to satisfy "prejudice" requirement, "defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.").

As to the first prong of *Strickland*, Petitioner has not proven that his counsel's representation was objectively unreasonable. The record indicates that counsel requested all *Brady* material and was informed by the government that: "[N]o such evidence is known to the People to exist." (Dkt. 4-3, Exhibit K, at ECF 46–47.) The government also stated that it had provided the defense with the victim's full autopsy record. (*Id*. at 36–38.) Although the government has produced a toxicology report as a result of Petitioner's discovery motion in the instant proceedings (Dkt. 7 at 1–2), Petitioner has failed to show that further action on his trial counsel's part would have led the government to produce the report. Nor has Petitioner shown a reasonable probability

10

that the report, if produced, would have led him to reject the plea offer and proceed to trial. Petitioner also presents no evidence to support his claim that counsel informed him that he would be unable to claim self-defense—a claim that, as discussed below, is undercut by Petitioner's plea and sentencing proceedings.

Finally, even if Petitioner were able to show that counsel's errors were objectively unreasonable under *Strickland*, Petitioner cannot satisfy its second prong. The trial court repeatedly informed Petitioner about the potential availability of a self-defense claim, and Petitioner repeatedly stated that he nonetheless wanted to plead guilty. (*See* Ex. B at 6; Ex. C at 1.) Petitioner has failed to show that different advice by his counsel or the availability of the toxicology report would have led him to reject the plea offer and proceed to trial.

Accordingly, the Court finds that the State court's denial of Petitioner's ineffective assistance of trial counsel claim was not an unreasonable application of federal law.

## IV. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Petitioner claims that appellate counsel erred in filing an *Anders* brief, given that there were non-frivolous claims on which to base an appeal. (Pet. at 6.) Petitioner also claims that he was not informed that he could request alternate appellate counsel and that he was not afforded the opportunity to oppose the *Anders* brief. (*Id.*)

Appellate counsel may request permission from the court to withdraw from a case, if after "conscientious examination" of the case, counsel concludes that the appeal would be "wholly frivolous." *Anders v. California*, 386 U.S. 738, 744 (1967). However, appellate counsel must do more than file a letter with the court stating that there is no appealable issue. *Anders*, 386 U.S. at 744. Counsel must file a brief containing all issues that might "arguably support the appeal." *Id.* at 744. The submission of an *Anders* brief does not meet the *Strickland* standard for ineffective

assistance if the request to withdraw is granted by the court. *Torres v. McGrath*, 407 F. Supp. 2d 551, 560 (S.D.N.Y. 2006) (citing *Anders*, 386 U.S. at 745).

Here, Petitioner's appellate counsel filed an *Anders* brief seeking permission to withdraw from the case, and that request was granted. As such, the submission of an *Anders* brief in this case cannot meet the *Strickland* standard for ineffective assistance. Additionally, counsel provided Petitioner with a copy of the brief and informed him that he could file a *pro se* supplemental brief setting forth the claims he believed could be raised on appeal. (Ex. D at ECF 36.) She informed him that if the court concluded that the claims were not frivolous, it would assign him new appellate counsel. (*Id.*)

Thus, Petitioner has failed to show that the State court's denial of his ineffective assistance of appellate counsel claim was an unreasonable application of federal law.

## V. *BRADY* CLAIM

Petitioner claims that the prosecution's withholding of the victim's toxicology report violated its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963). This report, which was produced for the first time in these proceedings in response to an order by this Court, shows that the victim was legally impaired on the night of stabbing, with a blood alcohol level of 0.09%, and was also under the influence of marijuana. (Dkt. 9 at 1–2.)

Suppression of evidence favorable to a defendant "violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. The duty to disclose such evidence is applicable even when there has been no request by the defendant, s*ee United States v. Agurs*, 427 U.S. 97, 107 (1976), and encompasses impeachment evidence as well as exculpatory evidence. *See United States v. Bagley*, 473 U.S. 667, 676 (1985). Evidence is material "if there is a reasonable probability that,

had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id*. at 682.

While the government's obligations under *Brady* are well established, they are significantly narrower when a defendant chooses to plead guilty rather than proceed to trial. The Supreme Court has held that "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant," on the basis that "the need for this information is more closely related to the fairness of a trial than to the voluntariness of the plea." *United States v. Ruiz*, 536 U.S. 622, 633 (2002). The "fast track" plea agreement at issue in *Ruiz* required the defendant to waive the right to receive any information the government possessed regarding impeachment or any affirmative defense that might be raised at trial. *See id*. As to information related to potential affirmative defenses, such as self-defense, the Court stated: "We do not believe the Constitution here requires provision of this information to the defendant prior to plea bargaining[.]" *Id.*

In *Friedman v. Rehal*, 618 F.3d 142 (2d Cir. 2010), the Second Circuit rejected a defendant's habeas claim that he was entitled to potential impeachment evidence (indicating that hypnosis had been used on victims who claimed sexual abuse) prior to entering a guilty plea. In applying *Ruiz*, the Second Circuit noted in dicta that while *Ruiz* did not expressly apply its holding to "all *Brady* material," "the Supreme Court has consistently treated exculpatory and impeachment evidence in the same way for the purpose of defining the obligation of a prosecutor to provide *Brady* material prior to trial[.]" *Friedman*, 618 F.3d at 154. The panel further noted that "in a pre-[Antiterrorism and Effective Death Penalty Act] habeas corpus case, decided prior to *Ruiz*, the Fifth Circuit held that a defendant's *Brady* claim was not cognizable on habeas review because the application of *Brady* to a guilty plea would, at best, constitute a 'new rule-one that seeks to protect

13

a defendant's own decision making regarding the costs and benefits of pleading and of going to trial.'" *Id*. at 154-155 (quoting *Matthew v. Johnson*, 201 F.3d 353, 362 (5th Cir. 2000) (en banc)).

Here, Petitioner claims that the toxicology report withheld by the government was material exculpatory evidence. As there is no clearly established federal law requiring the production of potentially exculpatory or impeachment evidence prior to a defendant's guilty plea, the Court cannot find that the State court unreasonably applied federal law in rejecting Petitioner's *Brady* claim.

## CONCLUSION

For the foregoing reasons, the petition for a Writ of *Habeas Corpus* pursuant to 28 U.S.C. § 2254 is denied. Because Petitioner has failed to make a substantial showing of the denial of any constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). Additionally, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for the purpose of appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

/s/ Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated: September 28, 2017
       Brooklyn, New York